J-S84007-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SHAUN C. WARRICK | |
| Appellant | No. 6 EDA 2016 |

Appeal from the Judgment of Sentence August 20, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004005-2011
CP-51-CR-0004006-2011

BEFORE: OLSON, SOLANO and FITZGERALD,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED January 12, 2017**

Appellant, Shaun C. Warrick, appeals from the judgment of sentence entered on August 20, 2015, as made final by the denial of Appellant's post-sentence motion on December 10, 2015. We affirm.

The trial court has ably summarized the underlying facts and procedural posture of this appeal. As the trial court explained:

> At trial, the Commonwealth presented the testimony of Philadelphia Police Detectives John Logan and James Burke, Philadelphia Police Officers Heather Andrews, Robert Flade, Jesus Cruz, and Robert Bakos, FBI Agent William Shute, Philadelphia Assistant Medical Examiner Dr. Edwin Lieberman, Alicia Watkins, Octavia Dugger, Kim Ivery, Lisa Williams, Kelly Hunt, Crystal Smith, and Kiana Walker. [Appellant] did not present any witnesses. Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence established the following.
>
> On February 14, 2011, [Appellant], who had been arguing with his girlfriend, Tiffany Barnhill, recruited a friend, Alicia

_____
* Former Justice specially assigned to the Superior Court.

Watkins, to go to Barnhill's residence and fight her. Watkins agreed to go with [Appellant], and recruited her friend, Octavia Dugger, to accompany them. [Appellant], Watkins, and Dugger then drove towards Barnhill's home in [Appellant's] car. While driving to Barnhill's home, [Appellant] made a series of phone calls to Mercedes Ivery, Barnhill's cousin, demanding to talk with Barnhill.

Upon arriving at Barnhill's home, . . . [Appellant] exited the vehicle and approached the door. [Appellant] kicked the door, breaking it open, and entered the house. Watkins and Dugger remained outside.

Shortly after [Appellant] entered the home, witnesses heard a series of gunshots coming from within the home. [Appellant] then ran out of the home, with Watkins and Dugger joining him as he returned to his car and drove away. As [Appellant] left the house, he placed something in the front of his pants. The day after the shooting, Watkins asked [Appellant] what happened inside the home and [Appellant] stated, "I fucked up." [Appellant] would later tell Watkins that he thought Watkins would "tell on him." [Appellant] also told Dugger not to "tell nobody about that day."

Minutes after the shooting, Mercedes Ivery's younger sister, Lexus, was walking home to the Rutland Street house when two neighbors, who had seen [Appellant] enter the home and heard the gunshots, called out to her. Lexus then called her mother, Kim Ivery, and told her about the gunshots in their home, which prompted Kim Ivery to call [the] police. No one other than [Appellant] was seen entering or exiting the home, either [30] minutes before the shooting or after the shooting, before police arrived on scene.

When the police arrived, they immediately noticed the broken door and proceeded into the home. Upon entering the home and going upstairs, police found [Tiffany] Barnhill and [Mercedes] Ivery in the upstairs bedrooms, with multiple gunshot wounds. Both women were dead. Police did not find anyone else in the home.

Ivery was shot a total of seven times: once in her face, once to the back left side of her head, twice in the left side of her chest, once in her right buttock, once in her left thigh and hip, and once in her right wrist. The shot to Ivery's head penetrated her skull and brain. One of the gunshot wounds to her chest penetrated her left lung and heart. Barnhill was shot a total of five times: once in her left shoulder and neck, once in her upper chest, near her armpit, which penetrated her left lung, once through the breast, which also penetrated her left lung, once on her side, which penetrated her diaphragm and liver, and once in her abdomen, penetrating her pancreas.

Police recovered a total of [14] .40 caliber fired cartridge casings from the [] house. Later examination would show that these fired cartridge casings were all fired from the same firearm. Police also recovered several projectiles, bullet jackets, and bullet jacket fragments, all of which were consistent with being fired from a .40 caliber firearm.

Police also conducted an analysis of the cell phone [Appellant] possessed on the day of the murders. Through cell phone tower analysis, the cell phone records showed that the possessor of that phone [traveled] to the area of the murders at the time of the shootings. The records also detailed a series of phone calls between that phone and [Mercedes Ivery's] cell phone throughout the early afternoon hours leading up to the time of the homicide. The phone also was used to make a series of phone calls to the home phone of the crime scene prior to the murders.

. . .

On August 19, 2015, following a capital jury trial before [the trial] court, [Appellant] was convicted of two counts of first degree murder [], one count of burglary [], one count of carrying a firearm without a license [], and one count of carrying a firearm on the streets of Philadelphia[.[1]]. Following a penalty phase hearing on August 20, 2015, [the trial court] imposed an aggregate sentence of two

---

[1] 18 Pa.C.S.A. §§ 2502, 3502, 6106, and 6108, respectively.

- 3 -

consecutive life sentences plus 16 to 32 [years'] incarceration. . . . [Appellant] filed [a timely] post-sentence motion[], which the [trial] court denied on December 10, 2015.

Trial Court Opinion, 3/17/16, at 1-4 (internal citations and footnote omitted).

Appellant filed a timely notice of appeal and now raises the following claims to this Court:

> [1.] Is [Appellant] entitled to an arrest of judgment on the charge of murder in the first degree, burglary and VUFA, § 6106 and § 6108 where the evidence is insufficient to sustain the verdict?
>
> [2.] Is [Appellant] entitled to a new trial on all charges where the greater weight of the evidence does not support the Commonwealth's verdict?

Appellant's Brief at 3.

We reviewed the briefs of the parties, the relevant law, the certified record, the notes of testimony, and the opinion of the able trial court judge, the Honorable Glenn B. Bronson. We conclude that there has been no error in this case and that Judge Bronson's opinion, entered on March 17, 2016, meticulously and accurately disposes of Appellant's issues on appeal. Therefore, we affirm on the basis of Judge Bronson's opinion and adopt it as our own. In any future filings with this or any other court addressing this ruling, the filing party shall attach a copy of the trial court opinion.

Judgment of sentence affirmed.

- 4 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/12/2017